UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re:<br><br>WORLD FAMOUS, INC.,<br><br>    Debtor. | Bankruptcy Case No.<br>04-61005-fra11 |
| KEYBANK NATIONAL ASSOCIATION,<br><br>    Plaintiff,<br><br>vs.<br><br>WORLD FAMOUS, INC.; N. KENNETH PHILLIPS; MACHEL T. PHILLIPS,<br><br>    Defendants. | Adversary Proceeding No.<br>04-6087-fra<br><br>MEMORANDUM OPINION |

Plaintiff commenced an action to collect a debt owed to it, and to foreclose a security agreement securing that debt.[1] The Defendants have advanced several defenses and counterclaims. Plaintiff now moves for summary judgment on the claims set out in

---

[1] The case was commenced in the Circuit Court for Jackson County, Oregon, and then removed to the United States District Court for the District of Oregon. It was removed to this Court by World Famous, Inc., after its petition for relief under Chapter 11 of the Bankruptcy Code. While maintaining that this is not a core proceeding, plaintiff consents to entry of dispositive orders and judgment by this Court. Defendant World Famous' consent is implicit in its removal of the case. Defendants Phillips have not been heard from on this point.

PAGE 1 - MEMORANDUM OPINION

its complaint. Defendants resist, asserting that the Plaintiff has failed to observe a duty of good faith and fair dealing implicit in the contract. Since there appear to be no disputed material facts, and Defendants advance no evidence supporting their theory, I find for the Plaintiff.

I. BACKGROUND

Plaintiff is a national bank doing business in Oregon, and elsewhere. Defendant World Famous, Inc., is a used car dealer, doing business in Jackson County, Oregon, as World Famous Autos. Defendants Phillips are shareholders of World Famous, Inc., and its guarantors with respect to Plaintiff.

World Famous first borrowed from Plaintiff in August of 2000. The loans were renewed on July 16, 2002.

As is typical in commercial lending, the transaction involved several different documents, each of which was dated July 16, 2002:

1. A business loan agreement establishing a line of credit, general requirements for security, representations of the borrowers, and conditions of individual advances. In particular, the agreement contained the following provisions:

> Borrower understands and agrees that: ...(B) The granting, renewing or extending of any loan by lender at all times shall be subject to lender's sole judgment and discretion.
>
> Conditions precedent to each advance:
>
> (7) There shall not exist at the time of any advance a condition which would constitute an event of default under this agreement....
>
> No event of default: There shall not exist at the time of any advance a condition which would constitute an

PAGE 2 - MEMORANDUM OPINION

> event of default under this agreement or under any
> related document.
>
> Default. Each of the following shall constitute an
> event of default under this agreement:
>
> > Payment default. Borrower fails to make any
> > payment when due under this loan.
>
> * * *
>
> Insecurity. Lender in good faith believes itself
> insecure.

2. A promissory note dated July 16, 2002, in the principal sum of $3 million. The promissory note by its terms required repayment of all outstanding principal plus all accrued interest on May 15, 2003.

3. A commercial security agreement and a commercial pledge agreement, each dated July 16, 2002, granting a security interest to the Bank in World Famous' inventory, chattel paper, accounts, equipment, general intangibles, contract rights, furniture and machinery, and an assignment to the Bank of all accounts and contract receivables due to World Famous.

4. A commercial swap agreement providing for the occasional adjustment of amounts due based on the fluctuation of interest rates; and

5. Personal guaranties executed by N. Kenneth Phillips and Machel T. Phillips. The guaranties are unlimited in amount, and provide for the absolute and unconditional promise to pay to Key Bank any indebtedness of World Famous, Inc.

Each of the agreements provides that it is to be construed under Oregon law and each contains a default provision providing

PAGE 3 - MEMORANDUM OPINION

that a failure to comply with any of the other instruments constitutes a default of that agreement.

It is undisputed that World Famous has not paid the amount due under the promissory note as of May 2003. World Famous has also discontinued payments required under the swap agreement. These acts constitute defaults under the promissory note and swap agreement, the business loan agreement, and security agreements.

In addition, Bank alleges, without contradiction, that World Famous has overdrawn its checking account with Key Bank in the amount of $3,040.07.

The guaranties have not been revoked by either Kenneth or Machel Phillips.

Defendants do not dispute any of the foregoing. In their defense, they allege[2] that the banking relationship was initiated after an aggressive marketing effort by Key Bank to win their business away from another bank. At the time the lending relationship was established in 2000, an officer of Key Bank represented that the Bank would serve World Famous "for the indefinite future." It was Mr. Phillips' expectation that Key Bank would in fact do so, and would be available to provide higher limits as World Famous' business continued to expand. The loans were, in fact, renewed in 2001 and 2002. Where the initial loan had been for $1,250,000, the 2002 renewal was for $3 million.

---

[2] Defendants' only evidentiary submission in opposition to the motion for summary judgment is the affidavit of defendant N. Kenneth Phillips. This memorandum assumes that all the allegations contained in the affidavit are true.

PAGE 4 - MEMORANDUM OPINION

Near the end of 2002, Plaintiff notified World Famous that it would not renew the line of credit upon expiration of the 2002 promissory note in May, 2003. It was explained to the Defendants that Plaintiff was discontinuing its business of lending to "buy here pay here" car sales companies "due to a loss incurred in a transaction with another such dealership." (Phillips' affidavit, page 10, paragraph 24.)

Defendants point out that, at the time they were informed that the loan would not be renewed, World Famous was current in all of its obligations to Key Bank, and in compliance with all non-monetary obligations under the several loan agreements. Defendants further allege that Defendants' eligible accounts were "well in excess" of the amounts required to support continued funding under the loan agreements.

World Famous immediately began a search for a source of continued financing. Mr. Phillips alleges that the efforts may have failed because an officer of the Bank had informed a loan broker of World Famous' needs, and that the loan broker "took it upon himself" to contact other potential lenders. "Whether his actions poisoned other lenders against World Famous we do not know for sure, but World Famous was turned down by a half dozen local banks that it contacted for financing." (Phillips' affidavit, page 10, paragraph 26.)

## II. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits,

PAGE 5 - MEMORANDUM OPINION

if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056. The movant has the burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

    A party opposing a properly supported motion for summary judgment must present affirmative evidence of a disputed material fact from which a factfinder might return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Fed.R.Bankr.P. 7056, which incorporates Fed.R.Civ.P. 56(e), provides that the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must respond with specific facts showing there is a genuine issue of material fact for trial. Absent such response, summary judgment shall be granted if appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 326-27 (1986).

    Counsel for Defendants states in Defendants' response to the motion for summary judgment in U.S. District Court that Defendants have not had sufficient time to conduct discovery. The case was commenced in August 2003, removed to U.S. District Court in September 2003 where Plaintiff's motion for summary judgment was filed, and removed to this court in March 2004. No explanation is offered to show why discovery could not have been made during this

PAGE 6 - MEMORANDUM OPINION

time. The court finds that Defendants have had more than enough time to obtain additional affidavits to supplement their opposition to Plaintiff's motion. No additional time will be granted.

III. DISCUSSION

A. Fraud in the inducement.

Defendants allege that the loan agreements are avoidable as having been induced by fraud. The elements of fraud under Oregon law are:

> 1) the accused had falsely represented a material fact; 2) the accused knew that the representation was false; 3) the misrepresentation was made with the intent to induce the recipient to act or refrain from acting; 4) the recipient justifiably relied on the misrepresentation; and 5) the recipient was damaged by that reliance.

Pollock et al. v. Horton et al., 190 Or.App. 1,20, 77 P.3d 1120, 1131 (2003)(internal citations omitted).

Defendants present no evidence in their affidavit opposing summary judgment to support their fraud theory. Broad promises of a fruitful and lasting commercial relationship made in an effort to obtain business do not constitute fraudulent representations. See generally Holland v. Lentz, 239 Or. 332, 344-346, 397 P.2d 787, 793-794 (1964)(discussion of dealer "puffing."). Moreover, if a party to an allegedly fraudulent contract wishes is disaffirm and rescind the contract, he must be prepared to restore the other party to the status quo. Bodenhamer v. Patterson, 278 Or. 367, 376-377, 563 P.2d 1212, 1217-1218 (1977). Defendants make no offer to restore to the Bank the money it advanced.

// // //

B.  <u>Good faith and fair dealing</u>.

Defendants take the position that Plaintiff failed to comply with covenants of good faith and fair dealing implicit in every agreement under Oregon law, citing to <u>Best v. U.S. National Bank</u>, 303 Or. 557, 562, 739 P.2d 554, 562 (1987). In his opposing affidavit, Kenneth Phillips avers that it was not within his or the other Defendant's "reasonable expectations" that the Bank would refuse to renew the credit line under the circumstances existing at the time. It follows that the Bank has not complied with the common law standard, as defined by Oregon's courts.

    1.  <u>Good faith requirement under Oregon common law</u>.

Under Oregon law "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement," Restatement (Second) Contract § 205 (1981), <u>Tolbert v. First National Bank of Oregon</u>, 312 Or. 485, 492, 823 P.2d 965, 969 (1991); <u>Pacific First Bank v. New Morgan Park Corp.</u>, 319 Or. 342, 876 P.2d 761 (1994); <u>Uptown Heights Assoc. Limited Partnership v. SeaFirst Corp.</u>, 320 Or. 638, 891 P.2d 639 (1995). This test has been described as an "objective" test, in which the court looks to the objectively reasonable expectations of the parties in determining whether the obligation of good faith has been met. <u>Tolbert</u>, supra, <u>Uptown Heights Associates</u>, 891 P.2d at 645.

Defendants' opposing affidavit does not disclose facts which would lead one to believe that their expectations that Key Bank would continue to lend indefinitely were objectively reasonable. It is not plausible to assert that, whatever advantage or disadvantage

PAGE 8 - MEMORANDUM OPINION

there may be to the Bank, the Bank would continue the relationship "indefinitely." That being said, it appears that the objective test is not properly applied in this case in any event.

    2. <u>Good faith under the Uniform Commercial Code</u>.

Article 9 of the Uniform Commercial Code, as enacted in Oregon, applies to:

> a. A transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract;

ORS 79.0109. Note that the Code's language speaks not of individual agreements or instruments, but of the transaction. It follows that UCC's standards respecting covenants of good faith apply to all the instruments of the transaction, and not simply the security agreements.

The general good faith obligation under the Uniform Commercial Code is found in Oregon in ORS 71.2030:

> **Obligation of good faith**. Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance or enforcement.

Good faith is defined in ORS 71.2010(19) as "honesty in fact in the conduct or transaction concerned."

Under Oregon law the duty of good faith created by the Uniform Commercial Code displaces the common law duty of good faith. <u>U.S. National Bank of Oregon v. Boge</u>, 311 Or. 550, 814 P.2d 1082 (1991). The <u>Boge</u> court points out that the subjective standard set out in the UCC "does not encompass commercial reasonableness or the broader concept of good faith under the common law." <u>Id.</u>

PAGE 9 - MEMORANDUM OPINION

In an extensive analysis of the structure of the Uniform Commercial Code, the Boge court concluded that the UCC's subjective test completely supplants the common law duty of good faith discussed in Best and other cases applying Oregon common law. The court found that the language of the statute suggests that the statutory definition was meant to be both uniform and complete, and that there is no room to import an objective standard from the common law into Article 9 transactions.

The subjective standard of the UCC does not look to the expectations of the parties, or the absence of negligence, or the standards of a reasonable and prudent person. As one commentator put it, all that is necessary is "a pure heart and an empty head." Bailey, Oregon Uniform Commercial Code § 1.12(1990). See Community Bank v. Ell, 278 Or. 417, 564 P.2d 685 (1977).

Defendants point to no evidence that Plaintiff was consciously dishonest in fact in its dealings with World Famous. Defendants rely on an incident in which an employee of the Bank suggests that Mr. and Mrs. Phillips' failure to engage the Bank's services for estate planning might adversely affect their relationship with the Bank. Assuming (as I must) that the words were said, and assuming further that they were true, the Bank's determination to discontinue its business relationship because Defendants declined to expand it along the lines that the Bank desired is not a breach of any duty of good faith under the UCC. If the Bank has the right under the contract itself to act as it did, its motive is irrelevant, since the obligation to act in good faith

PAGE 10 - MEMORANDUM OPINION

does not bar a party from enforcing explicit legal rights that it possesses under an agreement. Boge, 311 Or. at 558, 814 P.2d at 1092.

The promissory note is due by its terms, and the Bank acted within explicitly defined rights in the lending agreement when it declined to authorize a new loan. The obligation of good faith imposed by ORS 71.2030 cannot be used by the Defendants to change the terms of the contract or deprive Plaintiff of a right they granted to it when they executed the agreements. As the Boge court put it:

> The obligation of good faith does not vary the substantive terms of the bargain...nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract....

Boge, 311 Or. at 567, 814 P.2 at 1092.

Phrased differently, it is not appropriate under Oregon law to apply the general obligation of good faith if it is inconsistent with an explicit provision of the contract. Boge, supra; Sheets v. Knight, 308 Or. 220, 233, 779 P.2d 1000, 1008 (1989)(internal citation omitted).

## IV. CONCLUSION

The Agreements entered into by Debtor are in full force and effect and the Debtor is in default of those agreements. An order will be entered granting Plaintiff's motion for summary judgment on each of the claims contained in its Complaint. It appears from the affidavits and evidentiary materials submitted that there may not have been a meeting of the minds with respect to the LIBOR Swap

PAGE 11 - MEMORANDUM OPINION

Agreement signed by Mr. Philips.  That issue will therefore be dealt with at trial.  Trial will also be held on Defendants' counterclaims, with the exception of the claim for fraud which is necessarily disposed of by this holding.

This memorandum constitutes the Court's findings and conclusions of law.  Counsel for Plaintiff shall submit a form of order consistent with this ruling.

FRANK R. ALLEY, III
Bankruptcy Judge

PAGE 12 - MEMORANDUM OPINION